IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

RAYMOND R. PENNAY,

                          Plaintiff,

        vs.                                    Civil Action No.
                                               3:05-CV-0673 (FJS/DEP)

MICHAEL J. ASTRUE, Commissioner
of Social Security,[1]

                          Defendant.

---

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

HINMAN HOWARD LAW FIRM         EUGENE D. FAUGHNAN, ESQ.
P.O. Box 5250
80 Exhange St.
700 Security Mutual Bldg.
Binghamton, NY 13902-5250

FOR DEFENDANT

HON. GLENN T. SUDDABY          WILLIAM H. PEASE, ESQ.
United States Attorney for the   Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

---

        [1]     Plaintiff's complaint, which was filed on June 1, 2005, named Jo Anne B. Barnhart, the former Commissioner of Social Security, as the defendant.  On February 12, 2007, Michael J. Astrue took office as Social Security Commissioner.  He has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change.  *See* 42 U.S.C. § 405(g).

OFFICE OF GENERAL COUNSEL BARBARA L. SPIVAK, ESQ.
Social Security Administration Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278 JENNIFER S. ROSA, ESQ.
 Assistant Regional Counsel

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>       REPORT AND RECOMMENDATION</u>

   Plaintiff Raymond R. Pennay, a Vietnam war veteran who suffers

from a moderate mental condition which has been variously diagnosed as

mixed bipolar disorder, sub-clinical post-traumatic stress disorder

("PTSD"), anxiety, and depression, has commenced this proceeding

seeking judicial review of the denial of his application for disability

insurance benefits under the Social Security Act (the "Act").  In support of

his challenge to that agency determination, plaintiff alleges that the finding

of an Administrative Law Judge ("ALJ") assigned to hear and determine

the matter, to the effect that his psychological condition does not

significantly limit his ability to perform basic work activities, is not

supported by substantial evidence in the record.  Plaintiff requests that the

matter be remanded to the agency with a directed finding of disability, for

the limited purpose of calculating benefits owed to him.

   Having reviewed the record carefully in light of plaintiff's arguments,

I find that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence. Accordingly, I recommend that defendant's motion for judgment on the pleadings dismissing plaintiff's complaint be granted.

I.    BACKGROUND

Plaintiff was born on June 4, 1950; at the time of the administrative hearing in this matter, he was fifty-four years of age.  Administrative Transcript at pp. 34, 204.[2]  Plaintiff, who is divorced, and has two adult children and an undisclosed number of grandchildren, lives alone in a rented apartment in Binghamton, New York.  AT 34-35, 209, 214-15.

Pennay did not complete high school, having dropped out of school at the age of sixteen, although he later secured his general equivalency diploma ("GED") in 1971.  AT 49, 121, 204.  Plaintiff served in the United States Marine Corps from 1969 through 1971, having been assigned to work in a supply position in Vietnam, and received an honorable discharge from that service branch.  AT 123, 212-13.

Prior to January of 2004, plaintiff worked as a maintenance

---

[2]    Portions of the Administrative Transcript of evidence and proceedings before the agency, filed by the Commissioner together with his answer, Dkt. No. 3, will be cited herein as "AT ___."

employee at Fairview Recovery Services, a substance abuse recovery facility located in Binghamton.   AT 40, 46, 103, 204.  Plaintiff voluntarily quit that position in or about January of 2004, however, after confronting his supervisor over the belief that he was being gradually replaced by another employee.  AT 103, 121, 206.  Before working at Fairview Recovery Services, plaintiff was employed at a Binghamton area nursing home, also in a maintenance position, between December of 1997 and August, 2001.  AT 46, 103.

Plaintiff has a documented history of alcohol abuse and psychological difficulties, for which he has required some treatment over time.  *See generally* AT 105, 109-26, 145-91.  Plaintiff reports having experienced considerable alcohol abuse in his early years, resulting in two convictions for driving while intoxicated, but has been abstinent from alcohol usage since June of 1995 as a result of having undergone treatment at the Canandaigua Veteran's Administration Hospital, as well as later attendance at Alcoholics Anonymous meetings over a six year period.  AT 122-23.

Plaintiff has also received periodic mental health treatment, principally from Dr. Mokarram Jafri and C.S.W. Pat Pomeroy, through the

Binghamton Veteran's Administration Behavioral Health Outpatient Clinic. *See generally* AT 104, 109-20, 145-62, 165-91.  During the period between 2000 and September of 2004, plaintiff was generally seen by Therapist Pomeroy monthly, and by Dr. Jafri once every two or three months.  AT 207, 212.  Reports of those visits reveal that while plaintiff has been diagnosed as suffering from generalized anxiety disorder, sub-clinical PTSD, bipolar disorder, anger management, and depression, he has done well in treatment and his symptomology has been well-controlled through medication, including Risperidone, Buspirone, Paroxetine, Paxil and Zoloft.  AT 101, 122, 210-11.

By all accounts, plaintiff's mental condition has not affected his ability to function and to engage in normal daily activities.  In his disability function report, plaintiff noted that he is able to watch the news and drink coffee; normally runs errands; is able to attend to household chores, including landscaping; watches television; and enjoys sports, including baseball and football.  AT 74-81, 208, 214-15.  Plaintiff also reports that he is able to drive throughout the community, fishes once or twice weekly, and plays golf on Sunday mornings during the summer months with a friend whose company he particularly enjoys.  AT 78, 124.

II.   PROCEDURAL HISTORY

A.   Proceedings Before The Agency

_____Plaintiff filed an application for disability benefits on March 25, 2004, alleging a disability onset date of January 21, 2004.  AT 34-35.  As a result of the denial of that application, *see* AT 20-23, a hearing was held, at plaintiff's request, beginning on October 5, 2004 before ALJ Brian P. Kilbane to address his application for benefits.  *See* AT 200-17.  Following that hearing, at which plaintiff was represented by counsel, ALJ Kilbane issued a decision on November 30, 2004 , finding, based upon a *de novo* review of the evidence presented, that plaintiff was not disabled.  AT 11-15.

In arriving at his determination ALJ Kilbane applied the now-familiar, five step test for examining the issue of disability under the Act.  After finding that plaintiff had not engaged in substantial gainful activity since his alleged onset date, AT 12, ALJ Kilbane proceeded to examine the evidence relating to plaintiff's claimed medical condition.  AT 12-15. Based upon his review of that evidence, the ALJ concluded that while the plaintiff unquestionably suffers from discerned psychological and psychiatric conditions, including depression and PTSD, the record is

-6-

lacking in evidence that his condition significantly restricted his ability to perform basic work activities.  AT 15.  Accordingly, ALJ Kilbane concluded at step two of the analysis that plaintiff does not suffer from a severe impairment, and thus is not disabled.  AT 15-16.  The ALJ's finding became a final determination of the agency when, on April 14, 2005 the Social Security Administration Appeals Council denied plaintiff's request for review of that decision.  AT 4-6.

### B.   This Action

Plaintiff commenced this action on June 1, 2005.  Dkt. No. 1.  Issue was thereafter joined by the Commissioner's filing of an answer, accompanied by an administrative transcript of evidence and proceedings before the agency, on September 13, 2005.  Dkt. Nos. 2, 3.  With the filing of plaintiff's brief on December 23, 2005, and a brief on behalf of the Commissioner on January 30, 2006, Dkt. No. 6, this matter is now ripe for determination, and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).[3]  *See also* Fed. R. Civ. P. 72(b).

---

[3]     This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and subsequently amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 12, 2003.  Under that General Order an action such as this is

A.    <u>Standard of Review</u>

A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is limited; that review requires a determination of whether

the correct legal standards were applied, and whether the decision is

supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586

(2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal*

*v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp.

2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d

983, 985 (2d Cir. 1987)).   Where there is reasonable doubt as to whether

the Commissioner applied the proper legal standards, his decision should

not be affirmed even though the ultimate conclusion reached is arguably

supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 148.  If,

however, the correct legal standards have been applied and the ALJ's

findings are supported by substantial evidence, those findings are

conclusive, and the decision should withstand judicial scrutiny regardless

of whether the reviewing court might have reached a contrary result if

acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859

---

considered procedurally, once issue has been joined, as if cross-motions for judgment
on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil
Procedure.

F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel,* 13 F. Supp. 2d 312, 314

(N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant

evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420,

1427 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197,

229, 59 S. Ct. 206, 217 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184

(2d Cir. 2003).  To be substantial, there must be "'more than a mere

scintilla'" of evidence scattered throughout the administrative record.

*Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427; *Martone,* 70 F. Supp. 2d at

148 (citing *Richardson*).  "To determine on appeal whether an ALJ's

findings are supported by substantial evidence, a reviewing court

considers the whole record, examining the evidence from both sides,

because an analysis of the substantiality of the evidence must also include

that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464

(1951)).

When a reviewing court concludes that incorrect legal standards

have been applied, and/or that substantial evidence does not support the

agency's determination, the agency's decision should be reversed.  42

U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148.  In such a case the

court may remand the matter to the Commissioner under sentence four of

42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to

develop a full and fair record or to explain his or her reasoning.  *Martone*,

70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.

1980)).  A remand pursuant to sentence six of section 405(g) is warranted

if new, non-cumulative evidence proffered to the district court should be

considered at the agency level.  *See Lisa v. Sec'y of Dep't of Health and*

*Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand,

while unusual, is appropriate when there is "persuasive proof of disability"

in the record and it would serve no useful purpose to remand the matter

for further proceedings before the agency.  *Parker*, 626 F.2d at 235;

*Simmons v. United States R.R. Ret. Bd.,* 982 F.2d 49, 57 (2d Cir. 1992);

*Carroll v. Sec'y of Health and Human Servs*., 705 F.2d 638, 644 (2d Cir.

1983).

B.     Disability Determination - The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to

engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).   If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work

-11-

activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled".  *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age,

-12-

education, past work experience, and transferability of skills.  *Ferraris*, 728

F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    The Evidence In This Case

1.    Treating Physician

In support of his challenge of the Commissioner's determination,

plaintiff asserts that the ALJ improperly considered a determination of an

agency consultant, Dr. Carlton Aldridge, Ph. D., elevating his findings over

opinions of treating sources, including Dr. Jafri.[4]

Ordinarily, the opinion of a treating physician is entitled to

considerable deference, provided that it is supported by medically

acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with other substantial evidence.  *Veino*, 312 F.3d at 588;

---

[4]    In his brief, plaintiff asserts that Nurse Practitioner Elizabeth Carey and
CSW Pat Pomeroy qualify as treating sources whose opinions are entitled to the same
deference accorded under the governing regulations for treating physicians.  *See*
Plaintiff's Brief (Dkt. No. 5) at 7. Plaintiff is mistaken in this regard, since the opinions of
nurse practitioners and social workers are not entitled to the same weight as those of a
treating source.  *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983)
(noting that while the diagnosis of a nurse practitioner is entitled to some consideration,
it "should not be given the extra weight accorded a treating physician"); *Marziliano v.
Sullivan*, 771 F. Supp. 69, 75 (S.D.N.Y. 1991) (asserting that the opinion of plaintiff's
social worker did not command the same weight as a treating physician's opinion)
(citing *Mongeur*); *Hirsch v. Heckler*, 613 F. Supp. 267, 270 (S.D.N.Y. 1985)
(acknowledging that nurse practitioner's opinion was not afforded same weight as that
of a treating physician) (citing *Mongeur*).

*Barnett*, 13 F. Supp. 2d at 316.[5]  Such opinions are not controlling,

however, if contrary to other substantial evidence in the record, including

the opinions of other medical experts.  *Halloran v. Barnhart*, 362 F.3d 28,

32 (2d Cir. 2004); *Veino*, 312 F.3d at 588.  Where conflicts arise in the

form of contradictory medical evidence, their resolution is properly

entrusted to the Commissioner.  *Veino*, 312 F.3d at 588.

In deciding what weight, if any, an ALJ should accord to medical

opinions, he or she may consider a variety of factors including "[t]he

duration of a patient-physician relationship, the reasoning accompanying

the opinion, the opinion's consistency with other evidence, and the

physician's specialization or lack thereof[.]"  *See Schisler v. Sullivan*, 3

---

[5]     The regulation which governs treating physicians provides:

> Generally, we give more weight to opinions
> from your treating sources . . . If we find that a
> treating source's opinion on the issue(s) of the
> nature and severity of your impairment(s) is
> well-supported by medically acceptable
> clinical and laboratory diagnostic techniques
> and is not inconsistent with the other
> substantial evidence in your case record, we
> will give it controlling weight.   When we do
> not give the treating source's opinion
> controlling weight, we apply [various factors]
> in determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

F.3d 563, 568 (2d Cir. 1993) (discussing 20 C.F.R. §§ 404.1527, 416.927).

When a treating physician's opinions are repudiated, the ALJ must provide reasons for the rejection. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Failure to apply the appropriate legal standards for considering a treating physician's opinions is a proper basis for reversal and remand, as is the failure to provide reasons for rejection of his or her opinions. *Johnson*, 817 F.2d at 985-86; *Barnett*, 13 F. Supp. 2d at 316-17.

While arguing in general terms that the ALJ improperly discounted opinions of his treating sources, including Dr. Jafri, plaintiff cites no specific portions of Dr. Jafri's records which are in conflict with the ALJ's findings and in fact reflect that plaintiff's mental impairment substantially limits his ability to perform work related activities. Indeed, Dr. Jafri's notes are strongly suggestive of a contrary conclusion. Plaintiff has acknowledged to his treating sources that he voluntarily resigned from his position in January of 2004 out of anger and frustration, and that in hindsight it was "not a very wise decision . . . ." AT 206; *see also* AT 109. Plaintiff recounted to Dr. Jafri that after having been unsuccessful in attempting to regain his position at Fairview, he had no choice but to "go for disability." AT 114. This candid acknowledgment by the plaintiff that

his Social Security benefits application was not based upon his inability to work, but instead was simply a means of obtaining interim replacement of earnings lost from his former position, undermines his contention that his impairments restrict his ability to perform basic work functions.

Notes of treatment from both Dr. Jafri and CSW Pomeroy, moreover, reflect significant progress in plaintiff's condition through treatment and medication.  In February of 2004, for example, plaintiff recounted that with the prescribed Depakote he was feeling better, characterizing his medication as "a definite positive."  AT 117.  Similarly, plaintiff reported to Dr. Jafri in May of 2004 that his depression and anxiety were under control, and he had experienced no episodes of anger.  AT 156.

Periodic examinations conducted by CSW Pomeroy also confirm that plaintiff's medical impairments were less than severe at the relevant times. In notes of examinations conducted by the therapist in February and March of 2004, plaintiff was described as cooperative, with an appropriate affect, and with normal mood and intact thought process.   AT 115-16, 118.  An examination conducted in August of 2004 reflected no evidence of any severe mental impairment, and revealed that plaintiff's thought process, memory, cognitive function, abstraction, judgment, and insight

-16-

were all intact.  AT 149.  In September of 2004, Ms. Pomeroy wrote that

plaintiff's response to treatment had been good.  AT 165-66.

Having carefully scoured the records of plaintiff's psychiatric and

psychological treatment, I am unable to find any contradictory portions

which were expressly or implicitly rejected by the ALJ, when concluding

that plaintiff did not suffer from any sufficiently severe mental condition as

to preclude his ability to perform basic work activities.

### 2.    The ALJ's Second Step Determination

In addition to overlooking opinions of plaintiff's treating physician

Pennay asserts that the ALJ's determination at step two is not supported

by substantial evidence.  Plaintiff instead counters that his mental

condition is sufficiently severe to satisfy the modest requirement imposed

at step two at the sequential determination.  The Commissioner, in

contrast, defends the ALJ's determination in this regard as supported by

substantial evidence.

The governing regulations provide that

> [a]n impairment or combination of impairments is
> not severe if it does not significantly limit
> [claimant's] physical or mental ability to do basic
> work activities.

20 C.F.R. § 404.1521(a).  That section goes on to describe what is meant

-17-

by the phrase "basic work activities", which is defined to include "the abilities and aptitudes necessary to do most jobs." *Id.* § 404.1521(b).

It is true, as plaintiff has argued, that the second step requirement under the prescribed disability calculus is truly *de minimis*, and intended only to screen out the truly weakest of cases. *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995); *Baneky v. Apfel,* 997 F. Supp. 543, 545-46 (S.D.N.Y. 1998) (quoting *Dixon*). Nonetheless, the evidence in this case amply supports rejection of plaintiff's mental condition as a condition sufficient, in and of itself, to satisfy step two of the inquiry.

In finding lack of the requisite degree of severity in plaintiff's mental impairment, the ALJ relied considerably upon the opinions of Dr. Carlton Aldrich, Ph. D., who on April 13, 2004 conducted a psychological evaluation of the plaintiff, at the request of the agency. AT 15; *see* AT 121-26. Dr. Aldrich's report reflects that plaintiff was cooperative with the evaluation, exhibiting adequate social skills, and had coherent thoughts which were goal directed. AT 123. According to Dr. Aldrich, plaintiff also exhibited intact attention and concentration, and an average level of intellectual functioning with fair insight and judgment. AT 123-24. Based upon his examination, Dr. Aldrich opined that plaintiff is fully capable of

maintaining a regular schedule, can learn new tasks, and even can

perform a number of complex tasks independently, AT 124.  Dr. Aldrich

further found that plaintiff also is capable of making appropriate decisions,

and can adequately relate to others, concluding that plaintiff's problems

"appear to be quite mild" and noting that plaintiff's difficulties were not "of a

sufficient manner to prevent his reentry to the work force."  AT 124-25.

The opinions of a consultative examiner can provide substantial evidence

to support an ALJ's determination.  *Barringer v. Comm'r of Soc. Sec.*, 358

F. Supp. 2d 67, 79 (N.D.N.Y. 2005) (Sharpe, J.) (indicating that state

agency consultative examiners "are qualified as experts in the evaluation

of medical issues in disability claims.  As such their opinions may

constitute substantial evidence if they are consistent with the record as a

whole.") (internal quotations and citations omitted).

     The ALJ's findings also draw support from a mental residual

functional capacity ("RFC") assessment performed by an agency

consultant, Dr. Allan Hochberg, Ph. D. on April 27, 2004.  AT. 127-29.  In

that RFC assessment,  Dr. Hochberg discerned moderate limitations in

plaintiff's ability to accept instructions and respond appropriately to

criticism from supervisors, and in his ability to complete a normal workday

and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  AT 128.  With those exceptions, Dr. Hochberg found no significant limitations in any subcategory falling within the general areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation.  *Id.*  Those findings are echoed in a psychiatric review technique form completed by Dr. Hochberg, also on April 27, 2004, reflecting that plaintiff suffers from mild limitation in the areas of activities of daily living and difficulties in maintaining social functioning and a moderate limitation in maintaining concentration, persistent or pace.  AT 131-44.  These findings of an agency consultant, despite the fact that they are based exclusively upon a review of plaintiff's medical records with the benefit of an examination or testing, may similarly provide substantial evidence to support an ALJ's determination.  *See Barringer*, 358 F. Supp. 2d at 79.

In sum the evidence now before the court, which is largely uncontradicted, reveals that plaintiff's mental condition, for which he has received ongoing treatment, though with no hospitalization, *see* AT 121, has been well-controlled through treatment and the use of medication and

does not substantially interfere with his ability to perform basic work-related activities.  The Commissioner's determination at step two of the sequential analysis, to the effect that plaintiff does not suffer from a severe mental impairment, is thus supported by substantial evidence.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

The evidence which was before the agency, including notes from plaintiff's treating sources, is internally consistent, reflecting that plaintiff's mental condition has been well-controlled through medication and does not significantly interfere with his ability to perform basic work-related activities.  Recalling that it is plaintiff's burden to establish the existence of a sufficiently severe impairment to meet the requirements at step two of the sequential analysis, *see Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam), I conclude that plaintiff has failed to carry this burden, and the ALJ's determination that plaintiff does not suffer from a sufficiently severe impairment  to meet the requirements at step two of sequential analysis is supported by substantial evidence in the record. Accordingly, it is

RECOMMENDED, that defendant's motion for judgment on the pleadings be GRANTED, the Commissioner's determination of no

disability AFFIRMED, and plaintiff's complaint in this action DISMISSED in all respects.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within ten (10) days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

IT IS FURTHER ORDERED, that the Clerk of the Court serve a copy of this Report and Recommendation upon the parties in accordance with this court's local rules.


Dated:     August 3, 2007
             Syracuse, NY




David E. Peebles
U.S. Magistrate Judge